**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MARCUS RUSELL MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-295-M** |
| | ) | |
| **JUSTIN JONES et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Marcus Rusell Miller, a federal prisoner appearing pro se and proceeding *in forma pauperis*, has initiated the present action under 42 U.S.C. § 1983.  *See* Compl. (Doc. No. 1); Compl. Exs. 1-10 (Doc. Nos. 1-1 to 1-10).  Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636.  The undersigned has completed an initial review and recommends dismissal of this action for the reasons set discussed below.

I.     *Standard of Review and the Court's Screening Obligation*

Because Plaintiff is proceeding *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(ii), (iii). A district court may sua sponte dismiss a pro se complaint for failure to state a claim upon which relief may be granted where it is "patently obvious" that the plaintiff cannot prevail on the facts alleged and amendment of the pleading would be futile.  *McKinney v. State of Okla., Dep't of Human Servs.,*

*Shawnee*, 925 F.2d 363, 365 (10th Cir. 1991); *see Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) ("We apply the same standard of review for dismissals under § 1915(e)(2)(B)(ii) that we employ for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim."); 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

II.     *Background*

On September 7, 1993, in Case No. CF-93-1032 in the District Court of Cleveland County, Oklahoma, Plaintiff was convicted upon guilty plea of felony possession of contraband in a penal institution. Compl. at 9;[1] Cleveland Cnty. J. (Compl. Ex. 9 (Doc. No. 1-9)); *see State v. Miller*, No. CF-93-1032 (Cleveland Cnty. Dist. Ct. filed July 13, 1993).[2] Plaintiff was sentenced to a two-year term of imprisonment in the custody of the Oklahoma Department of Corrections ("ODOC"), to run consecutively to any sentence

---

[1] References to filings in this Court use the page numbers assigned by the Court's electronic filing system.

[2] The undersigned takes judicial notice of the dockets for Plaintiff's state-court criminal proceedings, which are publicly available through http://www.oscn.net, as well as Plaintiff's publicly available ODOC sentence and facility record, which is accessible through http://www.ok.gov/doc/.

that previously had been imposed upon Plaintiff as of that date. Cleveland Cnty. J. at 1-2; *State v. Miller*, No. CF-93-1032 (docket entry of Sept. 7, 1993).

As is clear from the nature of the relevant offense, Plaintiff on the date of his conviction in Case No. CF-93-1032 was serving a prison sentence on unrelated state criminal convictions. *See State v. Miller*, Nos. CF-79-3608, 79-3880, 80-396, 80-664, 80-750, 89-4303, 89-5423 (Tulsa Cnty. Dist. Ct.); *accord United States v. Miller*, 594 F.3d 1240, 1241 (10th Cir. 2010). On March 31, 2013, Plaintiff was received and "rebilled" into Jess Dunn Correctional Center ("JDCC"), an ODOC facility in Taft, Oklahoma, to begin serving his sentence on Case No. CF-93-1032. Compl. at 9; ODOC Audit Form (Compl. Ex. 7 (Doc. No. 1-7)). Plaintiff completed his two-year sentence, as reduced by time served and various credits, in approximately seven months; at that time, he was discharged by ODOC on October 30, 2013, to the United States Marshals Service ("USMS") to begin serving a federal criminal sentence. *See* Complaint at 1; ODOC Audit Form; ODOC, *Inmate Locator: Marcus R Miller*, http://docapp065p.doc.state.ok.us/servlet/page?_pageid=394&_dad=portal30&_schema= PORTAL30&doc_num=95622&offender_book_id=6872 (last visited Nov. 24, 2015).

III. *Discussion*

A. *Plaintiff's Complaint*

On March 23, 2015, Plaintiff filed his 42 U.S.C. § 1983 Complaint in this Court, bringing suit against ODOC, its Director, and its Appellate Review Authority; the Oklahoma County Board of Commissioners; the Warden and the Records Clerk at JDCC; and the ODOC Sentence Administrator (identified as Jane Doe/John Doe). *See* Compl. at

1, 3-5.  Plaintiff alleges violations of his rights under the Ex Post Facto Clause and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as violations of state law based on false imprisonment, malicious prosecution, and negligent and/or intentional infliction of emotional distress.  *Id.* at 6.  Plaintiff alleges each of his claims against all seven Defendants.  *Id.* at 1, 3-5.

Liberally construed, the premise underlying all of Plaintiff's claims is that, pursuant to the Oklahoma Prison Overcrowding Emergency Powers Act ("POEPA"), he was entitled to the application of 727 days of "emergency time credits" to the sentence imposed upon him in Case No. CF-93-1032.  *See* Compl. at 6-7, 9-20; Okla. Stat. tit. 57, §§ 570-576 (1991 & Supp. 1993) [hereinafter "POEPA" or "the Act"], *repealed in relevant part by* 2001 Okla. Sess. Laws, ch. 437, § 33 (eff. July 1, 2001).  Plaintiff alleges that: (i) he was eligible and entitled to receive these credits under the Act and ODOC policy, (ii) Defendants acted in various improper ways to prevent his receipt of these credits, (iii) these 727 days of credits essentially would have negated his entire sentence as imposed in Case No. CF-93-1032, and therefore (iv) his seven-month term of incarceration in JDCC was improper and unlawful.  *See* Compl. at 6-7, 9-20; "OP-060211," ODOC Sentence Administration Policy (eff. Jan. 6, 2011) (excerpt attached as Compl. Ex. 1 (Doc. No. 1-1)).  Plaintiff seeks compensatory and punitive damages and declaratory relief.  Compl. at 24.

### B.  The Oklahoma Prison Overcrowding Emergency Powers Act

As explained by the Tenth Circuit, at the time Plaintiff was convicted, the relevant provisions of POEPA

> "granted credits to qualifying prisoners when the inmate population exceeds 95% of the capacity of the correctional system for thirty consecutive days, and the governor either declares a state of emergency or fails to declare a state of emergency within fifteen days of the Department of Corrections' request for a declaration."

*Tracy v. Keating*, 42 F. App'x 113, 115 (10th Cir. 2002) (alteration omitted) (quoting *Arnold v. Cody*, 951 F.2d 280, 281 n.1 (10th Cir. 1991)); *see* POEPA § 572. "Emergency time credit" was the "time reduction of sentence allowed" when 95% capacity was exceeded. POEPA § 571(4). On the effective date of such an emergency, ODOC was required to grant sixty days of emergency time credit to certain persons specified in the Act. POEPA § 573. If the issuance of these credits did not reduce the prison population to below 95% capacity within the requisite time period, additional credits were to be granted to those persons who qualified under the Act. POEPA § 574; *Fancher v. Sirmons*, 58 F. App'x 804, 806 (10th Cir. 2003).

> The State of Oklahoma declared a state of emergency in the prison system on May 1, 1989. *See* Executive Proclamation, Gov. Henry Bellmon (Okla. Secy. of State executed May 1, 1989) (in light of the DOC's certification that the prison system exceeded 95% capacity, Governor Bellmon "proclaim[ed] a prison overcrowding emergency" and "authorize[d] the Director of the Department of Corrections to grant emergency time credits"). The situation persisted until November 23, 1998, when Governing Keating issued Executive Order 98-34. Executive Order, Gov. Frank Keating (filed Okla. Secy. of State Nov. 23, 1998). This order declared an end to the prison overcrowding emergency that had existed since 1989. *See id.*

*Russell v. Poppell*, No. CIV-99-1363-T (W.D. Okla. Apr. 5, 2000) (Am. R. & R. at 10-11), *adopted*, Order (W.D. Okla. July 13, 2000); *see also Tracy*, 42 F. App'x at 115. The Act's provisions regarding emergency time credits were repealed on July 1, 2001. *See* 2001 Okla. Sess. Laws, ch. 437, §§ 33, 34; OP-060211 § H; *accord* Compl. at 20.

*C. Discussion*

Plaintiff contends that because his judgment and prison sentence in 1993 in Case No. CF-93-1032 were issued during the 1989-1998 period of emergency described above, he should have received emergency time credits to reduce his sentence pursuant to Section 573 of the Act, despite the indisputable fact that he did not begin serving that sentence until March 31, 2013. Compl. at 6-7, 9-20; Compl. Ex. 2 (Doc. No. 1-2).

Prior to its repeal, Section 573 provided:

**§ 573.  Emergency time credit**

On the effective date of such an emergency, the Director shall grant sixty (60) days of emergency time credit to any person confined in the prison system who is:

1. Classified as medium security or any lower security level;

2. Incarcerated for a nonviolent offense; and

3. Not incarcerated for a second or subsequent offense under the provisions of Section 51 or 52 of Title 21 of the Oklahoma Statutes.

POEPA § 573.

Plaintiff asserts that he met the three numbered criteria of Section 573 regarding his incarceration on Case No. CF-93-1032 because on that conviction: he was classified as minimum security, incarcerated for the nonviolent offense of possession of contraband in a penal institution, and his sentence was not enhanced under the relevant statutory provisions.  *See* Compl. at 9, 18; Cleveland Cnty. J.; POEPA § 573(1)-(3).  It is clear from the face of the Complaint and the publicly available materials properly considered by the undersigned, however, that Plaintiff's service of the consecutive sentence imposed in Case No. CF-93-1032—i.e., the incarceration for a nonviolent offense that Plaintiff

alleges satisfies Section 573(2)—did not begin until *after* the emergency period had ended and that Plaintiff therefore did not qualify for emergency time credits under POEPA.

Section 573 directs the granting of emergency time credits to a person who is both "confined in the prison system" and satisfying the three stated criteria of Section 573 *at a specific point in time*: "[o]n the effective date of such an emergency." POEPA § 573. A consecutive sentence begins when another sentence has ended. *See* Okla. Stat. tit. 22, § 976 (providing that "Concurrent sentences" may be imposed on a "defendant . . . convicted of two or more offenses," such that "the imprisonment upon any one may commence at the expiration of the imprisonment upon any other of the offenses"). At no time during the 1989-1998 period of emergency was Plaintiff serving the consecutive sentence imposed on him in Case No. CF-93-1032; that term of incarceration did not begin until expiration of his already-imposed sentences, in 2013. Plaintiff himself asserts that he met the numbered requirements of Section 573 "on *March 31, 2013*, while incarcerated at [JDCC]," Compl. at 18 (emphasis added), rather than during the emergency period. *See also id.* at 9. Even if the sentence imposed in Case No. CF-93-1032 would have qualified under Section 573 if the incarceration thereon had occurred during a period of emergency—and prior to POEPA's repeal in 2001—Plaintiff's actual incarceration in Case No. CF-93-1032 began after the emergency was concluded. Therefore, Plaintiff was not entitled to emergency time credits under Section 573 with respect to Case No. CF-93-1032. *Cf. Tomlin v. State ex rel. Dep't of Corr.*, 814 P.2d 154, 156 (Okla. Crim. App. 1991) (holding that inmate serving a *concurrent* sentence on a

qualifying offense during the state of emergency "is a person incarcerated for a nonviolent offense pursuant to [Section 573(2)], regardless of [the nature of the] other concurrent sentences").

Plaintiff's proffered reading of Section 573—that qualifying for credits under the Act merely requires issuance of a conviction and sentence during the "effective date" of a declared emergency, even if the actual service of the term of incarceration on the allegedly qualifying offense does not begin until a future, post-emergency date—is inconsistent with the plain language of POEPA. The Act was designed to grant credits to qualifying prisoners and thereby "reduce the population of the prison system" to 95% capacity or less within 60 days of the date on which the emergency was declared. POEPA §§ 573-574. If the initial grant of credits did not sufficiently reduce the population, additional credits were to be granted every 60 days "*while the state of emergency exists*." *Id.* § 574 (emphasis added); *Fancher*, 58 F. App'x at 806. Then, once the prison population was sufficiently reduced, "[i]f the Governor f[ound] . . . that the emergency no longer exists," the Governor was required to "declare the prison overcrowding state of emergency ended," thereby preventing any further issuance of emergency time credits. POEPA § 575.

Thus, the Act worked to reduce the inmate population *during an emergency*, but a grant of credits was unnecessary and inapplicable after the emergency had ended and the inmate population had been sufficiently decreased. *See Arnold*, 951 F.2d at 283; *see generally Fancher*, 58 F. App'x at 806 ("The Act created a system to ease overcrowding within Oklahoma's prison system."). Granting credits to a person whose sentence was

imposed[3] during a period of emergency, but due to its *consecutive* nature would not be served until a later date when no emergency was in effect, would not result in the release of that person during the emergency and, therefore, not advance the Act's stated purpose of promptly reducing the inmate population. *See* POEPA §§ 572-574, 575.

Upon review of the allegations of the Complaint and publicly available records, the Court concludes that Plaintiff did not begin to serve the term of incarceration imposed in Case No. CF-93-1032 until March 31, 2013, and that, therefore, Plaintiff was not incarcerated on the sentence imposed in that case "[o]n the effective date of" a declared emergency—or at any point between May 1, 1989, and November 23, 1998—as required to qualify for the application of emergency time credits to Plaintiff's sentence in Case No. CF-93-1032. *See* Compl. at 6-7, 9-20; Cleveland Cnty. J.; ODOC Audit Record; *Russell*, Am. R. & R. at 10-11. Nor has Plaintiff alleged facts from which it could be concluded that Section 573 required, at any other time prior to repeal of that statute on July 1, 2001, application of emergency time credits to Plaintiff's sentence in Case No. CF-93-1032. *See* Compl. at 6-7, 9-20; ODOC Audit Record. Plaintiff therefore does not plausibly allege that he qualifies for the receipt of any emergency time credits for the prison sentence that began in March 2013.

Of note, in support of his contention that he qualifies for emergency time credits, Plaintiff cites *Ekstrand v. State*, 791 P.2d 92 (Okla. Crim. App. 1990), *abrogated on other grounds by Waldon v. Evans*, 861 P.2d 311 (Okla. Crim. App. 1993). *See* Compl.

---

[3] Plaintiff does not allege that he met the statutory criteria for receipt of emergency time credits with respect to any sentence he was serving prior to March 31, 2013, or after October 30, 2013.

at 11, 19. Plaintiff argues that pursuant to *Ekstrand*, he is entitled to "the benefit of the statute that was in effect at the time the crime was committed." *Id.* at 11; *see also id.* at 20 (alleging underlying crime in Case No. CF-93-1032 was committed in 1993). Plaintiff's reliance on *Ekstrand* cannot salvage his legal claims, however. First, as outlined above, the Act that was in effect "at the time the crime was committed" as well as at the time Plaintiff was convicted—1993 for both—expressly required that a prisoner be "confined," "[c]lassified," and "[i]ncarcerated for" a qualifying offense in accordance with the statutory requirements "[o]n the effective date of" an emergency to qualify for receipt of emergency time credits. *See* POEPA § 573; *Ekstrand*, 791 P.2d at 95.

Second, the holding in *Ekstrand* is inapplicable here. In that case, an Oklahoma state prisoner argued that a statutory amendment was unconstitutional as applied to him because the amendment changed the computation of certain time credits and allowed the prisoner fewer credits than he had received under the statute that had been in effect when he committed his crime. *See Ekstrand*, 791 P.2d at 93-94. The Oklahoma Court of Criminal Appeals agreed, holding that retroactive application of the amended statute to the prisoner and other similarly situated inmates "makes more onerous the punishment for crimes committed before its enactment" and that such a result "runs afoul of the prohibition against *ex post facto* laws." *Id.* at 95; *see also Arnold*, 951 F.2d at 282-83. In the instant case, even assuming the truth of Plaintiff's allegations, Plaintiff has suffered from no retroactive or ex post facto application of criminal law, and no application (or improper failure to apply) POEPA rendered his punishment "more onerous": he simply did not meet all of the criteria to be entitled to credits that were issued during a declared

emergency pursuant to the express terms of that Act.

### D. Plaintiff's Claims

#### i. Defendant Oklahoma County Board of Commissioners

Plaintiff's Complaint names "Oklahoma County Board of Commissioners" as a Defendant (hereafter, "Defendant OCBC") allegedly responsible for the deprivation of various of Plaintiff's constitutional rights. *See* Compl. at 3-4, 19-20. According to Plaintiff, Defendant OCBC "knew or should have known" that ODOC officials were not complying with POEPA and OP-060211, and Defendant OCBC "ratified and/or approved the unconstitutional conduct and negligent, wanton, reckless, and intentional actions of their employees so named." *Id.* at 19.

Plaintiff's allegations against Defendant OCBC fail to state any plausible § 1983 claim upon which relief could be granted because the allegations fail to establish the substantive elements of a claim under § 1983. Such a claim against a county rests on municipal liability and cannot be based on vicarious liability. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998). To establish municipal liability under § 1983, a plaintiff must first identify an official policy or custom of the municipality, whether enacted or maintained by its legislative body or an authorized decisionmaker. *Schneider*, 717 F.3d at 769-70. The plaintiff must then allege facts to establish that the policy or custom either (1) directly violated a federal right of the plaintiff, or (2) was the "moving force" behind a county employee's violation of a federal right of the plaintiff. *Id.* Finally, a plaintiff must allege facts "to show that the policy

was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* at 769, 770-71. Thus, for each claim of municipal liability, the plaintiff must establish three elements: (1) official policy or custom, (2) causation, and (3) state of mind. *Id.* at 769.

Plaintiff's references to Oklahoma state statutes and ODOC's internal guidance do not identify a specific policy or custom of officials of Oklahoma County, as required for a municipal liability claim under § 1983. *See* Compl. at 19-20; *Schneider*, 717 F.3d at 769-70. Plaintiff's allegations that Defendant OCBC "knew" of improper conduct by ODOC and ODOC's employees are conclusory and not entitled to the assumption of truth. *See Twombly*, 550 U.S. at 555. Regardless, such allegations are insufficient to establish an official policy or custom fairly attributable to Oklahoma County, given that there is no clear connection between the decisonmakers at ODOC and those of Oklahoma County, beyond the physical location of ODOC's Director's office. *See* Compl. at 19-20; ODOC, *Director's Office*, http://www.ok.gov/doc/About_Us/Director's_Office/index.html (last visited Nov. 24, 2015). Plaintiff similarly fails to connect his allegations regarding his Cleveland County criminal conviction or his incarceration at JDCC (which is not in Oklahoma County) to any official policy or custom of Oklahoma County. *See* Compl. at 19-20.

Having failed to sufficiently specify a policy or custom, Plaintiff cannot establish the remaining elements of municipal liability—i.e., that the policy or custom caused or was the "moving force" behind a violation of Plaintiff's federal rights and that the policy or custom "was enacted or maintained with deliberate indifference to an almost inevitable

12

constitutional injury." *See Schneider*, 717 F.3d at 769, 770-71.  Accordingly, because Plaintiff has failed to provide sufficient factual allegations to establish the requisite components of municipal liability, his claims against Defendant OCBC should be dismissed without prejudice for failure to state a claim upon which relief may be granted. *See Schneider*, 717 F.3d at 770; 28 U.S.C. § 1915(e)(2)(B)(ii).

        *ii.    Eleventh Amendment Immunity*

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state unless the immunity is abrogated by Congress or unequivocally waived by the state.  U.S. Const. amend XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996).  "Oklahoma has not consented to be sued in federal court."  *Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012); *accord Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983.  *See Berry*, 495 F. App'x at 921-22; *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979).  Thus, the State of Oklahoma is immune from § 1983 claims in federal court.

Eleventh Amendment immunity applies to any state agency considered to be an "arm[] of the state."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *see also ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *abrogated on other grounds as recognized in Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007).  An entity's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law."  *Steadfast Ins.*

*Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted).

Here, Plaintiff has named ODOC and several of that agency's employees as Defendants. *See* Compl. at 1, 3-5. "ODOC is . . . shielded by sovereign immunity because it is an arm of the state." *Berry*, 495 F. App'x at 922 (citing *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988)). All claims against ODOC therefore are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(iii).

"[I]t is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'" *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)); *see Edelman v. Jordan*, 415 U.S. 651, 663 (1974). ODOC's immunity therefore extends to claims against ODOC employees who are sued in their official capacities for money damages. *Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("Because the defendants are employees of the Oklahoma Department of Corrections . . . , the Eleventh Amendment applies to the official-capacity claims for damages."). Defendants ODOC Director Justin Jones, ODOC Appellate Review Authority Mark Knutson, JDCC Warden Mike Mullin, JDCC Records Clerk Ruby Taylor, and ODOC Sentence Administrator Jane Doe/John Doe,[4] as employees of ODOC, therefore are protected by Eleventh

---

[4] Defendant Jones is no longer ODOC Director, and other Defendants also may have left their positions at ODOC since the Complaint was filed. If the District Judge declines to dismiss this action, further proceedings should name the current ODOC official(s) on any remaining official-capacity claims. *See* Fed. R. Civ. P. 25(d).

Amendment immunity in their official capacities to the extent money damages are sought by Plaintiff. *See id.*; *Eastwood*, 846 F.2d at 632.

Accordingly, Plaintiff's federal claims against ODOC, and his federal claims for money damages against Defendants Jones, Knutson, Mullin, Taylor, and Jane Doe/John Doe in their official capacities, are barred by the Eleventh Amendment and should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii).

### iii. *Ex Post Facto Clause*

Plaintiff invokes the Ex Post Facto Clauses of the Constitution in his allegations that Defendants unlawfully denied him emergency time credits. *See* Compl. at 11, 12, 14, 19-20; U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1.

> Article I of the Constitution provides that the States shall not pass ex post facto laws. Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. The ex post facto prohibition forbids the enactment of a law imposing additional punishment on that prescribed at the time the offense was committed. *Weaver v. Graham*, 450 U.S. 24, 28 (1981). In order for a law to be ex post facto, (1) it must be retrospective, applying to events occurring before enactment, and (2) it must disadvantage the prisoner. *Id.* at 29. The law, however, need not impair a vested right.

*Arnold*, 951 F.2d at 281 (parallel citations omitted) (finding that retrospective application of amendments to POEPA—not at issue here[5]—violated Ex Post Facto Clause).

"Whether a state law is properly characterized as falling under the *Ex Post Facto* Clause . 

---

[5] *See generally Arnold*, 951 F.2d at 281 n.1 ("The 1989 amendment to the Act provides that if a prisoner is denied parole, he cannot earn emergency credits."); *Martin v. Oklahoma*, No. 98-6211, 1998 WL 552607, at *2 (10th Cir. Aug. 28, 1998) ("[A]lthough initial amendments to Oklahoma's statute were found to be ex post facto laws, Oklahoma has since corrected these constitutional infirmities by allowing inmates convicted before 1988 to earn credits under the program that affords them the most credit." (citing *Ekstrand*, 791 P.2d 92; *Turnham v. Carr*, No. 94-5014, 1994 WL 413243 (10th Cir. Aug. 5, 1994))).

. . is a federal question we determine for ourselves." *Carmell v. Texas*, 529 U.S. 513, 544 n.31 (2000).

Plaintiff in his Complaint bases his claims on a right to emergency time credits that he believes was conferred upon him through Section 573. Plaintiff points to no laws or amendments of laws that retroactively vitiated that right or otherwise disadvantaged him; rather, he contends that in 2013 ODOC should have *interpreted* Section 573 as applying to Plaintiff's sentence in Case No. CF-93-1032. Plaintiff has not alleged that ODOC's interpretation of Section 573 in 2013 differed from its interpretation of that statute at any earlier relevant point, such that Defendants' action could even arguably constitute an ex post facto violation. *See Smith v. Scott*, 223 F.3d 1191, 1193-94 (10th Cir. 2000) ("Although the Constitution only prohibits the states from passing an ex post facto 'Law,' U.S. Const. art. I, § 10, an agency regulation which is legislative in nature is encompassed by this prohibition . . . ."). Nor has Plaintiff alleged facts from which it could be concluded that the 2013 interpretation was not foreseeable. *See id*. at 1195 ("When a state law has been applied using different interpretations, the proper inquiry in an ex post facto challenge is whether the current interpretation was foreseeable. '[W]hen the current interpretation of a statute is foreseeable, there can be no Ex Post Facto Clause violation.'" (citation omitted) (quoting *Stephens v. Thomas*, 19 F.3d 498, 500 (10th Cir. 1994))).

As discussed above, the interpretation of Section 573 as not allowing Plaintiff emergency time credits in Case No. CF-93-1032 was entirely foreseeable. *Cf. Tracy*, 42 F. App'x at 115-16 (affirming dismissal of § 1983 claim of an ex post facto violation

with regard to POEPA where Oklahoma prisoner argued that ODOC officials improperly included private-prison bed space when calculating total prison capacity and declaring end to overcrowding emergency). For the same reason, the refusal to interpret Section 573 as applying to Plaintiff, even if viewed as a legislative action, did not retrospectively cause Plaintiff any "disadvantage." *See id.*; *Arnold*, 951 F.2d at 281; *Smith*, 223 F.3d at 1195; POEPA § 573. Plaintiff never met all of the statutory criteria of Section 573, either in 1993 or in 2013, and so his release was not prolonged or postponed by Defendants' alleged refusal to award emergency time credits to his sentence in Case No. CF-93-1032. *Cf. Arnold*, 951 F.2d at 283 (holding that petitioner was "entitled to have emergency credits currently calculated in accordance with the statute in effect at the time the offense he was convicted of was committed").

For these reasons, Plaintiff's claimed ex post facto violation must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. 1915(e)(2)(B)(ii).

### iv. *Fourth Amendment and Fifth Amendment*

Plaintiff next attempts to assert § 1983 claims based upon violations of the Fourth Amendment and the Due Process Clause of the Fifth Amendment. *See, e.g.*, Compl. at 3-5, 11. These claims should be dismissed.

Because Plaintiff is a convicted prisoner, not a pretrial detainee, and had been initially arrested and incarcerated long before entering JDCC, his claim that he was unreasonably "seized" and held at JDCC may implicate his due process rights under the Fourteenth Amendment but not the strictures of the Fourth Amendment. *See Becker v.*

*Kroll*, 494 F.3d 904, 914-15 (10th Cir. 2007); *Merritt v. Stark*, No. CIV-06-1427-W, 2008 WL 112039, at *4 & n.4 (W.D. Okla. Jan. 9, 2008) (citing *Robles v. Prince George's Cnty.*, 302 F.3d 262, 268 (4th Cir. 2002) ("Once the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply.")). Regarding the Fifth Amendment, Plaintiff makes no allegation that Defendants' alleged due process violations constitute federal action. Because "the Fifth Amendment due process clause only protects against due process violations caused by the federal government," Plaintiff's due process claims implicate only the Fourteenth Amendment. *Parnisi v. Colo. State Hosp.*, No. 92-138, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993); *see* U.S. Const. amends. V, XIV.

Accordingly, Plaintiff's claims brought under the Fourth and Fifth Amendments should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

> v.   *Eighth Amendment: Cruel and Unusual Punishment*

Plaintiff alleges that Defendants' failure to apply 727 days of emergency time credits constitutes cruel and unusual punishment prohibited by the Eighth Amendment because (i) Defendants have a duty to keep Plaintiff safe from constitutional harm and (ii) the prison system remained overcrowded during Plaintiff's incarceration at JDCC. *See* Compl. at 3-6, 12, 14-15, 18-20. As far as his first argument, the Eighth Amendment proscribes "acts or omissions sufficiently harmful to evidence deliberate indifference" to a "human need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303-05 (1991); U.S. Const. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825,

834 (1994). Its provisions do not create a general "duty" upon Defendants to prevent all other constitutional harms from befalling prisoners, as Plaintiff asserts.

Regarding Plaintiff's second argument, the Tenth Circuit has repeatedly rejected claims by prisoners denied credits under POEPA "that remaining in overcrowded prison conditions without the benefit of emergency time credits constitutes cruel and unusual punishment." *Shifrin v. Fields*. 39 F.3d 1112, 1114-15 & n.5 (10th Cir. 1994) (citing *Wilson*, 501 U.S. at 303-05); *see, e.g.*, *Aaron v. Fields*, No. 94-6143, 1994 WL 548928, at *2 (10th Cir. Oct. 7, 1994) (upholding dismissal upon § 1915 screening of Eighth Amendment claim by POEPA-ineligible prisoner); *Brennan v. Fields*, No. 94-6014, 1994 WL 363546, at *1 (10th Cir. July 13, 1994) (same); *Martin*, 1998 WL 552607, at *1 (same). "Absent allegations of 'deliberate indifference' by prison officials and of a 'specific deprivation' of a 'human need,' an Eighth Amendment claim based on prison conditions must fail." *Shifrin*, 39 F.3d at 1114 (quoting *Wilson*, 501 U.S. at 303-05).

Because Plaintiff cannot state a plausible claim for violation of his Eighth Amendment rights based upon denial of credits under POEPA, this claim should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

### vi. *Fourteenth Amendment: Equal Protection and Due Process*

Plaintiff alleges that Defendants have violated both his equal protection and due process rights under the Fourteenth Amendment by failing to issue POEPA credits against his sentence in Case No. CF-93-1032. *See, e.g.*, Compl. at 3-6, 10, 11. Again,

however, both published and persuasive Tenth Circuit precedent forecloses the possibility of a prisoner who is ineligible for credits succeeding on either claim.

To state an equal protection claim, Plaintiff must allege that he has intentionally been treated differently than similarly situated individuals. Further, Plaintiff must allege facts in the Complaint plausibly showing that he is a member of a protected class, or that he asserted a fundamental right, or that any distinction in his treatment compared to other prisoners' treatment was not reasonably related to a legitimate penological purpose. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). "[T]o prevail on his equal protection claim [the plaintiff] would have to prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (internal quotation marks omitted); *see also Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995).

With regard to Plaintiff's due process claim, lawfully incarcerated persons retain "only a 'narrow range of protected liberty interests.'" *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin*, 515 U.S. at 480 (internal quotation marks omitted). In *Sandin*, the Supreme Court held that the touchstone of the inquiry into whether a protected liberty interest exists is whether the conditions "impose[ ] atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Id.* at 484.

In *Shifrin*, the Tenth Circuit affirmed the district court's dismissal of the POEPA-ineligible plaintiff's equal protection and due process claims:

> The district court correctly determined that Appellant failed to make a viable argument that excluding inmates from emergency time credits because of their status as violent or repeat offenders violates the Equal Protection Clause [or] the Due Process Clause. First, the magistrate's recommendation properly concluded that violent or repeat offenders are not a suspect class; that the Act must therefore bear only a rational relationship to a legitimate state interest to withstand equal protection review; and that the Act is indeed rationally related to legitimate penological concerns. *Keeton v. Oklahoma*, 32 F.3d 451 (10th Cir. 1994).
>
> Second, the magistrate's recommendation also properly determined that Appellant, whose ineligibility under the Act was never in dispute, has no constitutionally protected liberty interest in shortening his sentence through emergency time credits. *Cf. Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979) (finding no protected liberty interest when state statute creates possibility of parole). Thus, Appellant has no viable claim to any specific due process procedures.

*Shifrin*, 39 F.3d at 1114 (alteration in original) (footnotes omitted). And in *Sharp v. Fields*, the Tenth Circuit upheld the sua sponte dismissal of an ineligible prisoner's equal protection and due process claims, explaining:

> As the district court noted, this circuit has held that the Act's exclusion of violent offenders from eligibility for emergency time credits on their sentences violates neither the Equal Protection Clause nor the Due Process Clause of the Fourteenth Amendment. As to the equal protection challenge, violent offenders are not a suspect class, and the Act is rationally related to legitimate penological concerns. As to the due process challenge, we have concluded that prisoners have no liberty interest in shortening their sentences through emergency time credits.

*Sharp*, No. 96-6094, 1996 WL 582724, at *2 (10th Cir. Oct. 10, 1996) (citing *Shifrin*, 39 F.3d at 1114; *Keeton*, 32 F.3d at 451);[6] *see also Fancher*, 58 F. App'x at 806 ("[Petitioner] did not have a liberty interest in the potential application of early release credits under the Act."); *Tracy*, 42 F. App'x at 115, 116 (agreeing with district court that plaintiff failed to state a due process claim upon which relief could be granted because plaintiff "had no liberty interest in the emergency credits"); *Taylor v. Hargett*, No. 99-6102, 2000 WL 135172, at *1 (10th Cir. Feb. 7, 2000) ("[T]he Oklahoma statutes governing inmate credits do not guarantee that inmates will receive . . . emergency cap credits." (citing Okla. Stat. tit. 57, §§ 571-574)).

As discussed above, Plaintiff is ineligible under the terms of the Act for receipt of emergency time credits. Having reviewed his Complaint and pursuant to *Shifrin*, *Sharp*, and the other authorities cited herein, the undersigned finds that Plaintiff likewise has not plausibly alleged, and cannot plausibly pursue, claims that Defendants violated his equal

---

[6] The Tenth Circuit in other cases has likewise found that prisoners could not plausibly allege violations of equal protection and due process based upon their failure to qualify for emergency time credits under POEPA. *See, e.g.*, *Keeton*, 32 F.3d at 452 (affirming dismissal of equal protection claim because POEPA "is rationally related to legitimate state interests" and prisoner offered no evidence that he was treated differently from similarly situated prisoners); *Day v. Reynolds*, No. 93-6367, 1994 WL 118204, at *2 (10th Cir. Apr. 5, 1994) (affirming district court's holding that the differential treatment accorded certain offenders under POEPA "did not constitute a violation of due process or the equal protection clause"); *Wilkinson v. Fields*, No. 94-6016, 1994 WL 408146, at *1 (10th Cir. Aug. 3, 1994) (affirming § 1915 dismissal of POEPA-ineligible prisoner's claim that the Act "violates equal protection due to classification by type of crime or past criminal record"); *Martin*, 1998 WL 552607, at *1 (affirming dismissal of equal protection claim on screening); *Aaron*, 1994 WL 548928, at *1-2 (same); *Brennan*, 1994 WL 363546, at *1 (same); *cf. Martin v. Oklahoma*, No. 94-6004, 1994 WL 131754, at *1 (10th Cir. Apr. 15, 1994) (upholding district court's finding that the Act's classifications were "rationally related to a legitimate state interest" and did not violate ineligible prisoner's right to equal protection).

protection or due process rights by failing to award him such credits. Plaintiff's Fourteenth Amendment claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### vii. *Plaintiff's State-Law Claims*

Plaintiff's Complaint references "false imprisonment/malicious prosecution" and "negligent and/or intentional infliction of emotional distress" and so is reasonably construed as attempting to raise tort claims under Oklahoma law. *See* Compl. at 6. Because Plaintiff in his Complaint alleges no viable federal claim, and Plaintiff has not alleged or established diversity of citizenship between himself and the Defendants, and no amendment of the pleading would remedy these deficiencies, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. §§ 1331, 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## RECOMMENDATION

For the reasons outlined above, the undersigned recommends: (i) that all 42 U.S.C. § 1983 claims against the Oklahoma Department of Corrections, and all § 1983 claims for money damages against Defendants Patton, Knutson, Mullin, Taylor, and Jane Doe/John Doe in their official capacities, be dismissed pursuant to the Eleventh Amendment and 28 U.S.C. § 1915(e)(2)(B)(iii); (ii) that all remaining 42 U.S.C. § 1983 claims be dismissed for failure to state a claim upon which relief may be granted pursuant

to 28 U.S.C. § 1915(e)(2)(B)(ii); and (iii) that the Court decline to exercise supplemental jurisdiction over the state-law claims alleged in the Complaint.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by December 16, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 25th day of November, 2015.


_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE